Banco Popular de Puerto Rico, Petitioner, *v.* Superior Court of Puerto Rico, San Juan Part, Antonio S. Romero, Respondent; Margarita Domínguez, Intervener.

No. 2389. Submitted March 9, 1959.—Decided March 9, 1961.

*Gabriel de la Haba, Rafael Baragaño, Jr.,* and *Garrard Harris* for petitioner. *Víctor A. Coll* for intervener, plaintiff in the main action.

Mr. Justice Santana Becerra delivered the opinion of the Court.

Margarita Domínguez filed an ordinary complaint in the Superior Court, San Juan Part, against Banco Popular de Puerto Rico, alleging that on February 1, 1952 she rented an apartment for a dwelling on the third floor of building 258 San Justo Street, administered by the Bank, for a monthly rental of $50; that the defendant charged her a rent of $75

from that date until July 31, 1955, that is, an overcharge of $25 a month during 41 months, amounting to $1,025; and that on September 14, 1955 she asked the Bank for refund of the excess payments, and 30 days elapsed without this overcharge having been reimbursed. The plaintiff asked that the Bank be ordered to pay the sum of $3,075, that is, three times the overcharge of $25 a month which had been collected from February 1, 1952 until July 31, 1955, plus attorney's fees and costs.

Banco Popular answered the complaint accepting that the plaintiff had paid a rent of $75 from February 1, 1952 to July 31, 1955, but denied that the property had been rented as a dwelling and that any amount in excess of the maximum legal rent had been collected, claiming, on the contrary, that it had rented to the plaintiff "the commercial premises to which the complaint refers, for commercial or professional purposes and use, for a monthly rental of $75, authorized by the Office of Price Administration of Puerto Rico." The Bank accepted that the plaintiff had requested the reimbursement of the rents allegedly overcharged, which it did not reimburse, 30 days having elapsed since said request was made. Finally, the defendant invoked as a defense that the action for treble damages was barred regarding any overcharge collected prior to November 10, 1954, pursuant to the provisions of § 8(h) of the Reasonable Rents Act. The complaint was filed in the Superior Court on November 10, 1955.

The case having been heard on its merits, the trial court rendered judgment on December 28, 1956 and decreed that the defendant Bank had charged the plaintiff $25 monthly in excess of the maximum price fixed for the afore-mentioned apartment as dwelling, but decided that the action for treble damages was barred regarding the overcharge collected prior to November 10, 1954, that is, prior to the year immediately preceding the day on which the complaint was interposed.

Instead of the $3,075 claimed, the court granted the plaintiff in its judgment, the sum of $675 which was three times the excess charged each month during a period of 9 months, that is, the two months of November and December 1954, and the seven months between January 1 and July 31, 1955. It ordered the defendant to pay $175 for attorney's fees plus costs. Notice of the judgment was given to the parties on January 14, 1957 and a 30-day term elapsed without either of the parties having appealed therefrom, or having asked for a reconsideration, the judgment therefore becoming final and unappealable.

On February 26, 1957, after the judgment had been satisfied by the Bank, the plaintiff filed a motion in the Superior Court, asking for a correction of the judgment. She claimed that there was an error in the said judgment because if the court decided that the plaintiff could claim treble damages only insofar as the overcharges included in the period of 9 months, not barred, it had decided that the plaintiff paid overcharges from February 1, 1952 until July 31, 1955, and that therefore, she could recover at the *regular rate* for the period between February 1, 1952 and October 1, 1954. The plaintiff argued that the Bank owed her, on that account, the additional sum of $825, that is, the overcharge collected each month during said period. On March 19, 1957 the court rendered an order (Correction of Judgment) stating the following:

"The plaintiff, in her motion holds that our judgment of December 28, 1956 should be corrected, in conformity with Rule 60 of the Rules of Civil Procedure, and order the defendant to reimburse the overcharge of $25 charged by it from February 1, 1952 until October 31, 1954, that is during 33 months.

"The plaintiff is correct.

"In our afore-mentioned judgment we concentrated our attention on the specific issue of triple damages; and, due to *inadvertence, we made no provision* regarding the overcharge of $25 a month, that is, (33 × 25.00=) $825.00, which was

collected by the defendant, *ut supra,* and was claimed by the plaintiff in her complaint of November 7, 1955.

"By virtue thereof, our judgment is amended in order to require the defendant to return to the plaintiff the aforesaid $825 charged in excess." (Emphasis added.)

By reason of the proceedings had, on April 8, 1957 the judge himself set aside the aforesaid decision and afterwards, on August 23, 1957, he entered an order reinstating the same. The defendant then asked him to make clear whether the decision of March 19, 1957, by virtue of which he corrected the original judgment of December 28, 1956, was effective or not as of September 6, 1957, when he received notice of the order of August 23, and the plaintiff having objected, the judge, on September 17, 1957, dismissed the aforesaid motion thus:

"If it were only a matter of correcting a judgment for excusable inadvertence in *calculating mathematically a specific number of rentals to be reimbursed,* we do not see how it is possible to regard the judgment prospectively, like a fresh judgment and consequently render its conclusiveness operative as of September 6, 1957." (Emphasis of the Judge.)[1]

In order to review the order entered by the lower court on March 19, 1956, reinstated by that of August 23, in which the judgment is corrected granting plaintiff the additional sum of $825, we issued certiorari at the request of the Bank, which maintains before us that the afore-mentioned order is erroneous on the merits, and besides, that the trial court did not have any legal authority to render it. Logically, we should decide, in the first place, this last aspect of the case.

Section 8(a) of the Reasonable Rents Act (Act No. 464 of April 25, 1946, as amended by Act No. 421 of May 14, 1947, 17 L.P.R.A. § 188) provides that: "The landlord who charges or receives from his tenant an amount

---

[1] The importance which this entailed for the defendant is that if the corrected judgment had a prospective effect as of September 6, 1957, it would have been entitled to the term of appeal.

in excess of the maximum rent fixed by the Administrator, shall return said excess to his tenant within thirty (30) days following the request therefor in writing made of him by the tenant or the Administrator." Subdivision (d) of said section establishes that if the thirty days mentioned elapse without the landlord making reimbursement "the tenant may file an action against the landlord for three times the sum of the reimbursement, or for fifty (50) dollars, whichever is larger, plus the costs and attorney's fees of the plaintiff." Subdivision (h) of § 8 provides then that treble damages. actions authorized by this section "shall be filed only within the year following the date on which the overcharge was paid or the date on which the Administrator ordered a reduction in the rent, including reimbursement to the tenant, as the. case may be."

According to the record, the plaintiff did not employ the administrative remedy to obtain reimbursement, but in the light of subdivision (a) she directly required the defendant to refund the alleged excess. Thirty days having elapsed without the defendant having made the reimbursement, the plaintiff filed the action for three times the proceeds of the reimbursement pursuant to subdivision (d).

Undoubtedly, the trial court believed that it was correcting a mere *inadvertence on its part* regarding a mathematical calculation of certain rentals to be returned. Such was its belief, apart from expressing it, that its decision of September 17, 1957 rendered the correction of March 19 "nunc pro tunc" to the date of the original judgment. Nevertheless, the situation was completely different as a question of law.

It is true that the complaint covered a claim for treble damages for the period from February 1, 1952 until July 31, 1955, and that the trial court stated that the action was barred regarding the rentals collected prior to November 1954, and rendered a judgment for treble damages only insofar as those rentals which were collected after that date

and were not barred were concerned. But such a situation did not inevitably lead to the conclusion that, within this complaint, there accrued to plaintiff a right of *judicial* action for the single amount of all the excess paid during the period which, for the purpose of the action for treble damages, was already barred. The problem which confronted the trial court with plaintiff's motion for correction of judgment is, precisely, the question of law which not so long ago we left reserved and undecided in *Peñagarícano* v. *Superior Court; Nadal, Int.*, 81 P.R.R. 849, when we stated the following:

"In this case the Superior Court had before its consideration, as we do now, the direct review of the administrative order and not an action for liquidated damages. It is advisable to note that we are not deciding now nor anticipating any judgment, which shall be left for the proper occasion, as to whether or not under the provisions of paragraphs (*a*) and (*b*) of § 8 the tenant may claim judicially the simple reimbursement of the overcharges, or file the action for damages, whether or not he may claim the simple excess paid after the one-year limitation as a second cause of action, or whether, on the contrary, in case that the owner declines to return administratively, his sole relief is triple judicial reimbursement, but with the limitation provision."[2]

Having explained the nature of the matter which was submitted to the trial court, let us examine its legal power in disposing of the same in the way it did.

Rule 60 of Civil Procedure (1943) which was in force on March 19, 1957, when the trial judge corrected the judgment, provided in its subdivision (*a*) that "clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission" could be corrected by the court at any time of its own initiative upon previous notice or on the motion of any party.—32 L.P.R.A., App. R. 60—We have seen that it was not a matter of a mere

---

[2] As it will be observed later on, the decision of this case does not require either that we decide this question now.

"clerical" error or of an oversight or omission of the judge, in his judgment, regarding the mathematical calculation of rentals to be reimbursed, but that what appeared before him was a problem in law which involved the interpretation of subdivisions (*a*), (*d*) and (*h*) of § 8 of the Reasonable Rents Act, as we indicated in dealing with that problem in the case of *Peñagaricano, supra*. The change which the trial court thought it was making in said judgment, by way of correction of an oversight on its part in a mathematical computation, was nothing more than the acknowledgment in favor of the plaintiff of a right to a *judicial* cause of action for the simple amount of the overcharges collected and already barred for the purpose of the action for treble damages, an acknowledgment which if given in the original judgment, it may or may not have constituted an error in law in the application of the Reasonable Rents Act reviewable by appeal. In the light of what has been expressed, it is obvious that the situation did not fall under subdivision (*a*) of Rule 60, as the same stood when the judge applied it in this case, and by the same token, it would not fall either under its equivalent rule, No. 49.1 of the Rules of Civil Procedure of 1958.[3] It has never been understood that under subdivision (*a*) of Rule 60, now Rule 49.1, a judicial error was susceptible of correction. *Cf. Cyclopedia of Federal Procedure*, 3d ed., vol. 10 at 295–99; 29 Cal. Jur. 2d at 17; 6 Moore, Federal Practice, 4041–53 2d ed.; Barron & Holtzoff, Federal Practice & Procedure, vol. 3 at 398–402.

██ We will examine then the situation in the light of subdivision (*b*) of Rule 60, which provides that on motion and upon such terms as are just, the court may relieve a party

---

[3] Rule 49.1, identical to federal Rule 60(a) after the latter was amended in 1946, provides that in that which is relevant to mistakes in the forms of judgments, orders, or other parts of the record and errors therein arising from oversight or omission, may be corrected by the court at any time, of its own initiative, or on the motion of any party, and after such notice, if any, as the court orders. 32 L.P.R.A., Cum. Supp. (1959), R. 49.1.

or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment was taken, and does not affect the finality of the same, or suspend its operation.—32 L.P.R.A., App., R. 60(*b*)—In *Guilhon & Barthelemy* v. *District Court*, 64 P.R.R. 289, 297 (1944) we clarified that in carrying § 140 of the Code of Civil Procedure over into Rule 60(*b*), this Court committed the same error of translation as found in § 140, and we stated: "As the English version indicates, it is the mistake, etc., of the moving party, and not mistake of the court or others, which may be corrected pursuant thereto." In *González* v. *American Surety Co.*, 71 P.R.R. 330, 333–334 (1950), we confirmed the former view by stating that subdivision (*b*) of Rule 60 refers to those cases in which by inadvertence, mistake, surprise or excusable neglect *of a party* the court may relieve it from a judgment, order or proceeding entered against it. In *Iturriaga* v. *Fernández*, 78 P.R.R. 29, 35 (1955), we reconfirmed our view and stated that: "We agree with appellee that Rule 60(*b*) does not by its context authorize the setting aside of a judgment because of errors committed by a court. Such Rule refers in fact to errors of the moving party and not errors of the court."[4]

Pursuant to the procedural situation which prevailed here on March 19, 1957, and to the applicable doctrine, and plain-

---

[4] In effect, Federal Rule 60(b), as it was enforced originally in September 16, 1938, and as it prevailed in 1943 when we adopted ours, provided that the court may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through *his* mistake, inadvertence, etc. Rule 60(b) which we adopted provided in an identical manner in its English text. 32 L.P.R.A. App., R. 60(b). In that part of the rule, the federal rule literally followed § 473 of the Code of Civil Procedure of California, and by its own text as well as by the case law of that state, it was always interpreted and applied in the sense that it referred to the error of the party, whether it was an error of

tiff having invoked in her motion of February 26, 1957, subdivision (*b*) of Rule 60 to correct an alleged error of the *Court*—assuming that it may have been an error not to render judgment for the regular amount of the rentals, *cf. Peñagarícano* v. *Superior Court, supra*—and not to correct an error or inadvertence *of the party*, the legal remedy sought did not lie under this subdivision of the Rule.[5]

For the reasons previously stated, the decision rendered by the Superior Court, San Juan Part, on March 19, 1957, as it was reinstated by that of August 23 of said year, is hereby set aside and the case remanded to the trial court for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Negrón Fernández did not participate in the discussion nor in the decision of this case.

---

fact or of law, and not to errors of the court. Such is still the situation in California, and our Rule 60(b) continued to be thus until it was changed in 1958.

Nevertheless, since 1946 subdivision (b) of the federal rule was substantially modified by removing the words "*taken against him*" and "*his*" it being provided then that the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2)... 28 USCA, R. 60(b), p. 310. For an extensive exposition, see Moore, *op. cit.*, vol. 7, pp. 6 to 31 and 73 to 94.

[5] By way of illustration and without it being understood that the Court is expressing its own view, it may be noted that in the light of the 1946 version of Federal Rule 60(*b*), which insofar as pertinent is equivalent to our Rule 49.2 since 1958, the situation would be as follows: In the report of 1945 of the Advisory Committee which prepared the amendments of 1946, 28 USCA Rules, p. 312, it was stated that the adjective pronoun "his" (*ante*, footnote 4) had been eliminated on the basis that it was too restrictive, and that subdivision (b) should include the mistake or negligence "*of others*" which may be likewise pertinent and call just as much for supervisory jurisdiction, as in those cases where the judgment is taken against the party through *his* mistake, inadvertence, etc. In the light of this report and the change effected, Moore states that relief can be had under this subdivision after the 1946 amendment, not only for the mistake of the moving party but also for the mistake, inadvertence, etc. of other parties to the action, the secretary, and *even* the court.—Vol. 7 at 230.—Further on, referring specifically to the relief against a judicial error (pp. 235 to 238), Moore asks himself if this extension of Rule 60(b)(1) authorizes relief from a substantive error of law by the court, and he is inclined to believe that the answer is in the affirmative, although

he admits that the matter is not free from doubt and that there are contrary authorities, as in effect it is so.   The text writer observes that Rule 60(b) by express provision does not affect the finality of a judgment, nor does it suspend its effects, and hence, does not operate directly to toll the time for appeal; and that if the rule is construed to authorize a motion for relief from a judgment because of judicial error, then an appeal will subsequently lie from a final decision on the motion, and appeal time will have been indirectly extended.   He believes, nevertheless, that relief can be given under Rule 60(b)(1) *as long as* the motion is presented within a *reasonable* time.   Considering the historical precedents regarding the ancient auxiliary reliefs which were later incorporated in the rule, and the principle of law already self-evident that neither those historical remedies nor the rule itself have been considered as a substitute for relief of appeal, or to indirectly extend the time for appeal, see:   *Providential Development Co.* v. *United States Steel*, 236 F.2d 277, 281;   *Title* v. *United States*, 263 F.2d 28, 29;   *cert. denied* 359 U. S. 989;   *Elgin National Watch Co.* v. *Barrett*, 213 F.2d 776, 780;   *American Nat. Bank & Trust Co.* v. *Taussig,*

255 F.2d 765, 767; *cert. denied* 358 U. S. 883; *Collins* v. *City of Wichita, Kansas,* 254 F.2d 837, 839; *Annat* v. *Beard,* 277 F.2d 554, 559; *Perrin* v. *Aluminum Co. of America,* 197 F.2d 254, 255; and see in analogy *Jusino* v. *Morales y Tió,* 139 F.2d 946, 947 (C. A. 1). Moore concludes that *a reasonable* time in such a case should not exceed the time allowed for appeal. In this manner, the text writer observes, neither is the principle of finality affected, nor would the relief operate as a substitute for appeal. Among the old auxiliary reliefs which served as a historical background to Rule 60(b)(1) is the equitable bill of review to review errors in law. The time for filing a bill of review began only when the time for filing a petition for rehearing ended, which may have been for an error in fact as well as for an error in law, and before the expiration of the time for appeal. Vol. 7, pp. 53 to 61; vol. 3, pp. 3527 *et seq.* (1938). Moore suggests that in such cases appeal should be made in time although a petition for action under the rule is made, asking then leave of the appellate court so that the trial court shall consider the remedy. (See, in this respect, the proceeding provided by our Rule 49.2 of 1958.)